IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 17-cr-10092-NMG |
| | ) | |
| GARY P. DECICCO, | ) | |
| | ) | |
| Defendant | ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR
DISCOVERY OF EXCULPATORY EVIDENCE AND BILL OF PARTICULARS**

The United States, through undersigned counsel, hereby respectfully requests that the

Court deny Defendant Gary P. DeCicco's Motion for Discovery of Exculpatory Evidence and

Bill of Particulars (Docket No. 69) (the Motion). The government has repeatedly informed

Defendant's counsel, both in writing and orally, that it has complied with its discovery

obligations under the applicable rules. Accordingly, the Motion is moot to the extent it seeks to

compel the production of information the government has already disclosed or which does not

exist. To the extent that the Motion seeks a bill of particulars, the Court should deny the Motion

because it is untimely and because it seeks discovery of information the government is not

required to prove for an extortion conviction.

The actual admissible evidence in this case has been laid out in detail in several

government filings. The government disputes the vast majority of Defendant's recitation of the

"Expected Trial Evidence" contained in the Memorandum of Law in support of the Motion

(Docket No. 70) (the MOL), notes that much of that "evidence" is either inaccurate or

inadmissible, and incorporates herein by reference its prior recitations of the provable facts in

this case contained in the Affidavit of Matthew Elio attached to Complaint (Docket No. 3-1), the

Affidavit of Sandra Lemanski in Support of Pre-Trial Detention (Exhibit 3, introduced at 3/22/2017 detention hearing; also Docket No. 70-5), and the United States' Opposition to Motion for Review of Detention Order by District Court Judge (Docket No. 47).  The government further notes that, consistent with other filings in this case, the MOL is replete with inaccurate, irrelevant or patently false allegations regarding CW-1, the victim of the violent beating Defendant arranged in January 2015.[1]

## 1. __Written Immunity Agreements__

The government is required to provide, within 28 days of arraignment, "a statement whether any promise, reward, or inducement has been given to any witness whom the government anticipates calling in its case in chief."  Rule 116.2(b)(1)(C) of the Local Rules of the United States District Court for the District of Massachusetts (LR).  Contrary to Defendant's assertion, the government is not required to produce such information for *any* potential witness in this case, but only for those witnesses whom the government anticipates it will call to testify in its case in chief.  *See* LR 116.2(b)(1)(C); *cf.* Docket No. 70, at 1 ("information regarding promises, rewards, and inducements made to potential witnesses"), 5 (requesting "production of *all* immunity and cooperation agreements, both now and on a continuing basis").

---

[1] For example, CW-1 was never an informant for the IRS and there is no evidence that he told anyone he was an IRS informant.  *Cf.*, Docket No. 70, at 2 and 9.  There is evidence that *Defendant* thought CW-1 had informed on him to the IRS, and that *Defendant* spread this rumor to at least one common acquaintance of Defendant and CW-1.  But Defendant's belief that CW-1 was an IRS informant does not make it an actual fact.  In a more vitriolic example, Defendant alleges that CW-1 "also had made a vulgar and insulting proposition about a woman close to [Defendant]."  Docket No. 70, at 2.  Despite the allegation that this purported affront was to a woman close to Defendant, and despite having provided alternative motives for his attack on CW-1 in prior pleadings – including a motion for review of this Court's detention order – Defendant has never mentioned this alleged incident before, calling into question its veracity.

The government disclosed all promises, rewards and inducements given to witnesses whom the government anticipates calling in its case in chief in its very first discovery letter, on May 26, 2017.  *See* Docket No. 70-1, at 6 (¶ 3).  Although it does not concede that it is required to provide copies of the two immunity agreements and one immunity order disclosed to Defendant on May 26, the government provided copies of those documents on June 26, 2017. *See* Docket No. 70-3, at 3 (§ III.1).  Accordingly, Defendant's argument regarding the production of those documents is moot.  The government also informed Defendant that it "is aware of its continuing duty to disclose newly discovered additional evidence or material that is subject to discovery and inspection under Local Rules 116.1 and 116.2(b)(1) and Rule 16 of the Federal Rules of Criminal Procedure," Docket No. 70-1, at 7, and therefore Defendant's request that the Court order the government to produce any immunity agreements it enters into with its case in chief witnesses in the future is moot.  Finally, to the extent Defendant's request goes beyond witnesses the government anticipates to calling in its case in chief, the Court should deny the request because the government is simply not required to produce such information under any applicable rule.

## 2.  <u>Other Promises, Rewards, or Inducements</u>

As set forth above, the government disclosed all promises, rewards and inducements made to witnesses it anticipates calling in its case in chief, including CW-1, CW-2, CW-3 and CW-4, on May 26, 2017.  *See* Docket No. 70, at 6, ¶ 3.  The government further disclosed expenditures made by the FBI for meals provided to CW-1, CW-2 and CW-3 during debriefings and for a phone card provided to CW-2 for investigative purposes, even though these expenses could hardly be considered promises, rewards or inducements as they were payments for

expenses and they were made *after* the witnesses implicated Defendant in the assault on CW-1. *See* Docket No. 70, at 3-4, ¶ 1.

While Defendant may find it hard to believe that others would be honest when approached by law enforcement and voluntarily admit their participation in a crime, that does not mean that "[i]t is clear that the government has not disclosed all promises, rewards, and inducements in this case" or that "[t]here is clearly some understanding or tacit bargain between the government and these witnesses." *See* Docket No. 70, at 7. There simply are no undisclosed promises, rewards or inducements to the witnesses the government intends to call in its case in chief and therefore the request is moot.

In the same section regarding promises, rewards and inducements, Defendant requests the Court to compel and disclose all information "regarding CW-1's informing to any agency about [Defendant], all information about any instances in which CW-1 disclosed to individuals outside the government that he was acting as an informant, and all information about all situations in which CW-1 informed against people with whom he had personal or business conflicts." Docket No. 70, at 9. Defendant offers no basis for why such information could possibly be considered a promise, reward or inducement, and no basis for production of such information now or ever under the applicable rules. Accordingly, the Court should deny the request.

### 3. <u>Information That Would Tend To Negate Defendant's Guilt</u>

The government has disclosed all evidence in its possession regarding an alternative motive for Defendant to arrange and pay for the assault on CW-1, and it has no evidence that anyone other than Defendant arranged and paid for the delivery of the flowers to and assault on CW-1. Phone records, witness testimony, and documentary and video evidence all point to Defendant as the person who paid for the flower delivery and dictated the accompanying card to

CW-1, and the person who paid for and arranged the beating of CW-1.  Information that

individuals or organizations other that Defendant had disagreements or disputes with CW-1

which were not somehow tied to the flower delivery or to the January 2015 beating may be

impeachment material, but such information does not tend to directly negate Defendant's guilt

and therefore it is not discoverable this far in advance of trial.

Not only is there is no basis for providing early discovery of impeachment material

regarding CW-1 – assuming such information even exists – the government is particularly wary

of doing so in this case.  Defendant is accused of extorting CW-1 over time using threats and fear

of harm and ultimately a vicious beating.  Since his arrest, Defendant has waged a virtual smear

campaign against CW-1 in his public pleadings, mischaracterizing and misrepresenting

information contained in documents which the government has produced to date.  Given that

such information is not remotely exculpatory, and given the nature of the crime with which

Defendant is charged and the content of Defendant's filings to date, the Court should decline

Defendant's request.  *See* 18 U.S.C. § 3771 (Court and government have an obligation to ensure

protection of victim's right to be treated fairly and with respect for dignity and privacy, and to be

reasonably protected from defendant).

### 4.  Title III Intercepts

Under Local Rule 116.1(c)(1)(C)(i), the government must provide, within 28 days of

arraignment:

> a written description of any interception of wire, oral, or electronic communications as
> defined in 18 U.S.C. § 2510, *relating to the charges in the indictment* in which the defendant
> was intercepted and a statement whether the government intends to use any such
> communications as evidence in its case-in-chief.

(Emphasis added).  The government confirmed on May 26, 2017 that "[n]o oral, wire, or

electronic communications of the defendant . . . were intercepted *relating to the charges in the*

*indictment.*"  Docket No. 70-1, at 4, ¶ C.  This is all that is required of the government at this stage of the case.

Defendant then asked the government to "confirm that it does not intend to use in its case-in-chief, for cross-examination, impeachment, rebuttal, or for any other purpose in the litigation of this case any existent Title III intercepts" of Defendant.  Docket No. 70-2, at 2, ¶ I. Despite having no obligation to respond to this request, the government stated that it does not intend to use any existent Title III intercepts in its case in chief, but further stated that it "cannot confirm, without knowing the defendant's witness list or theory of defense, or whether the defendant will testify at trial, that it would not use such communications on cross-examination, for impeachment, in its rebuttal case, or for other purposes in the litigation of this case."  Docket No. 70-3, at 2, ¶ I.  Nothing about the government's response is "cute."  *See* Docket No. 70, at 11.  In fact, nothing more is required of the government at this stage of the proceedings.

### 5.  <u>Members of the Prosecution Team</u>

As an initial matter, this request was not made in Defendant's discovery letter and should be denied outright for failure to comply with Local Rule 116.3(e).  Moreover, the government confirmed in a telephone call for defense counsel that, while it does not concede that the Massachusetts State Police (the MSP) is part of the prosecution team, the government has consulted with MSP and produced any materials the government was required to produce in automatic discovery, and therefore this request is moot as to MSP.  The Saugus Police and the Nahant Police are not members of the prosecution team.

**6.   Bill of Particulars**

Defendant seeks a bill of particulars describing all conversations or acts in which

Defendant demanded an economic interest from CW-1, or threatened violence to secure such an

interest.  The Court should deny Defendant's request outright because it is procedurally

defective, in that Rule 7(f) of the Federal Rules of Criminal Procedure allows that a "defendant

may move for a bill of particulars *before or within 14 days after arraignment or at a later time if*

*the court permits*."  (Emphasis added).  Indeed, the fact that the request was filed two and a half

months after arraignment, without leave of Court, and appended to a discovery motion, strongly

suggests that the Defendant is "not so much confused about what he is charged with as he is

desirous of using a bill of particulars as a discovery device."  *United States v. Mehanna*, 09-CR-

10017-GAO, 2011 WL 796400, *2 (D. Mass. Mar. 1, 2011) (O'Toole, D.J.).

Even if the Court does not deny the request for particulars outright, the request fails

because it is without merit.  The First Circuit has noted that "[m]otions for bills of particulars are

seldom employed in modern federal practice."  *United States v. Sepulveda*, 15 F.3d 1161, 1192

(1st Cir. 1993).  When such motions have been pursued, the First Circuit has made clear that

"they need be granted only if the accused, in the absence of a more detailed specification, will be

disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the

shelter of the Double Jeopardy Clause."  *Id.* at 1192-93; *see also United States v. DiMasi*, No.

09-0166-MLW, 2011 WL 468213, at *4 (D. Mass. 2011).  The defendant bears the burden of

establishing that nondisclosure of the particulars would disable him from preparing a defense,

lead to prejudicial surprise, or hamper his ability to assert his rights under the Double Jeopardy

Clause.  *United States v. Stryker Biotech, LLC*, No. 09-10330-GAO, 2010 WL 2900684, at *4

(D. Mass. July 21, 2010) (internal citations omitted).

In evaluating such motions, federal courts have repeatedly emphasized that a bill of particulars is not a discovery tool to compel the Government to detail its evidence in advance of trial.  *See, e.g., United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996); *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993); *United States v. Brodie*, 326 F.Supp.2d 83, 91 (D.D.C. 2004).  Similarly, federal courts have repeatedly stated that a bill of particulars is not a means to force the Government to preview to the defendants the Government's case or the manner in which the Government will prove the offenses.  *See, e.g., United States v. Glecier*, 923 F.2d 496, 502 (7th Cir. 1991); *United States v. Chalmers*, 410 F.Supp.2d 278, 285 (S.D.N.Y. 2006); *United States v. Cuong Gia Le*, 310 F.Supp.2d 763, 781 (E.D.Va. 2004).  Specifically, a bill of particulars may not be used to compel the Government to disclose its trial strategies or the legal theories on which it intends to rely at trial.  *See, e.g., Stryker Biotech, LLC*, 2010 WL 2900684, at *3 (internal citations omitted); *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983); *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980); *United States v. Dames*, 380 F.Supp.2d 270, 274 (S.D.N.Y. 2005).

The inquiry is thus not whether additional information would be ***helpful*** to a defendant, but rather, whether the defendant, "in the absence of a more detailed specification, will be ***disabled*** from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause."  *Sepulveda*, 15 F.3d at 1192-93 (emphasis added); *see also United States v. Nelson-Rodriguez*, 319 F.3d 12, 30-31 (1st Cir 2003).  As such, the First Circuit has held that "an indictment is sufficiently particular if it elucidates the elements of the crime, enlightens a defendant as to the nature of the charge against which she must defend, and enables her to plead double jeopardy in bar of future prosecutions for the same offense."

*Sepulveda*, 15 F.3d at 1192 (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974) and Fed. R. Crim. P. 7(c)(1)).

The Indictment in this case alleges all that is required under applicable law. Moreover, the government has detailed its allegations against Defendant in two lengthy affidavits (Docket Nos. 3-1 and 70-5), and the discovery in this case is not voluminous. Accordingly, this is not a situation where Defendant has been or will be forced to comb through a mountain of documents and try to guess what improprieties the government alleges he committed. Requiring the government to provide more details regarding Defendant's wrongful conduct would be essentially forcing the government to detail its evidence in advance of trial, a forbidden use of the bill of particulars mechanism. *See, e.g., Fletcher*, 74 F.3d at 53; *Wessels*, 12 F.3d at 750.

Defendant misses the mark by insisting that the government provide particulars of "all conversations or acts in which, according to the government, [Defendant] actually demanded an economic interest from CW-1, or threatened violence to secure such an interest" (Docket No. 70, at 12) when, in fact, the government is required to prove no such particulars at trial. Indeed, Defendant has cited no case in support of his request. The Hobbs Act proscribes extortion, which is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." The statute is written in the disjunctive, and the government can meet its burden by establishing that Defendant used actual force or violence, or express or implied threats of force or violence, or simply that Defendant attempted to generate fear in CW-1 in order to obtain property from him. *See, e.g., United States v. Goodoak*, 836 F.2d 708, 712-13 (1st Cir. 1988) ("to prove attempted extortion it is sufficient merely to show an attempt to generate fear in the victim"); *United States v. Abelis*, 146 F.3d 73, 83 (2d Cir. 1998) (Hobbs Act "does not limit the definition of extortion to

those circumstances in which property is obtained through the wrongful use of fear created by

implicit or explicit threats, but instead leaves open the cause of the fear.").  Moreover, there is no

requirement that the government prove that Defendant specifically spelled out his demand for

property to a victim; all that is required is that the victim understood the defendant's conduct as

an implied threat.  *United States v. Bucci*, 839 F.2d 825, 828 (1st Cir. 1988).

An indictment need not be infinitely specific, *Sepulveda*, 15 F.3d at 1192, and combined

with the affidavits and discovery already provided or made available to Defendant, there can be

no argument that he is unable to prepare a defense.

## CONCLUSION

For all of the foregoing reasons, the Motion should be denied in its entirety.

Respectfully submitted,

WILLIAM D. WEINREB
Acting United States Attorney

By:  */s/Kristina E. Barclay*
Kristina E. Barclay
Assistant U.S. Attorney

Date:  July 27, 2017

## CERTIFICATE OF SERVICE

I hereby certify that this document filed electronically on this date will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Kristina E. Barclay*
Kristina E. Barclay
Assistant United States Attorney

July 27, 2017